UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ARVID ANN CURTIS,

Petitioner,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security Administration,

Respondent.

Case No. 3:13-cv-374-CWD

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

Pending before the Court for consideration is Petitioner Arvid Ann Curtis's (Petitioner) Petition for Review of the Respondent's denial of social security benefits, filed on August 23, 2013. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

**PROCEDURAL AND FACTUAL HISTORY**

Petitioner filed an application for Social Security Disability Insurance benefits on December 10, 2009. This application was denied initially and on reconsideration. Administrative Law Judge (ALJ) R.J. Payne conducted a hearing on October 11, 2011, and a supplemental

hearing on May 14, 2012. During the course of the two hearings, the ALJ heard testimony from Petitioner, Petitioner's husband, and medical expert John Morse, M.D. ALJ Payne initially issued a decision finding Petitioner not disabled on November 14, 2011, but vacated that decision after holding the supplemental hearing. ALJ Payne then issued a decision on June 8, 2012, finding Petitioner not disabled and capable of preforming her past relevant work as a sales clerk. Petitioner timely requested review by the Appeals Council, which denied her request on June 27, 2013, and issued a written decision.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the May 14, 2012 supplemental hearing, Petitioner was 62 years of age. Petitioner has a high school education and some additional vocational schooling in the area of public speaking. Petitioner's prior work experience includes past work as a sales clerk, home health aide, janitor, and brake technician.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of June 30, 2009. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's chronic headaches, obesity, asthma, multilevel spondylosis in the cervical spine, and degenerative disc disease in her lumbar spine severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments,

specifically listings 1.04 (spinal disorders) and 3.03 (asthma). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. The ALJ determined Petitioner retained the RFC to perform a wide range of light work with physical limitations, which included never climbing ladders, ropes or scaffolds, but that she could climb stairs and ramps frequently, and she could balance, stoop, crouch, crawl, and kneel. The RFC included also avoidance of concentrated exposure to fumes, odors, dusts, gases, poor ventilation, unprotected heights, and moving machinery.

Based upon the ALJ's RFC assessment, the ALJ found Petitioner was able to perform her past relevant work as a sales clerk. Because Petitioner did not demonstrate an inability to perform past relevant work, the ALJ did not proceed to step five.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. §

405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner asserts the ALJ erred at steps two and four. First, Petitioner contends the ALJ improperly rejected the opinion of the examining psychologist, and therefore erred by failing to find Petitioner's mental health impairments severe at step two. Second, Petitioner contends the ALJ's RFC determination was in error because the ALJ improperly weighed Petitioner's credibility, failed to include all her limitations from her impairments, and misstated the evidence concerning Petitioner's headaches and fatigue.

### 1. Severity of Petitioner's Mental Health Impairment

Prior to finding a medically determinable physical or mental impairment severe, a claimant must establish the existence of a physical or mental impairment. 42 U.S.C. § 423(d), Soc. Sec. Ruling (SSR) 96-4p, available at 1996 WL 374181.[1] An impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–5 (9th Cir. 2005). Reported symptoms alone cannot establish the existence of an impairment. *Id*. at 1005–6; SSR 96-4p.

For an impairment to meet the "severity" requirement, it must "significantly limit" one's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include physical functions such as walking, standing, sitting, and lifting; capacities for seeing, hearing and speaking; understanding, remembering, and carrying out simple instructions; using judgment; responding appropriately in a work situation; and dealing with changes in a

---

[1] Social Security Rulings do not have the force of law but must be given some deference as long as they are consistent with the Social Security Act and regulations. *Ukolov v. Barnhart*, 420 F.3d 1002, n.2 (9th Cir. 2005). In *Ukolov*, the Ninth Circuit found that SSR 96-4p was consistent with the purposes of Titles II and XVI of the Social Security Act. *Id.*

routine work setting. 20 C.F.R. § 404.1521(b). Disability is defined, therefore, in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Medical and other evidence must be furnished to establish the existence of the disability. *Bowen*, 482 U.S. at 146. However, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153–154 (1987) (stating that the step two inquiry is a de minimis screening device to dispose of groundless claims). An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, at 1290 (9th Cir. 1996).

Here, the ALJ found Petitioner's depression not severe because there was insufficient evidence of record to support a finding she had symptoms associated with her mental health condition that more than minimally limited her ability to perform work related activities for a twelve month period of time. (AR 34-35.) Petitioner contends the ALJ's finding was in error, because the record indicated she sought treatment for her depression on a regular basis between 2008 and 2011, and psychologist Rebecca Alexander's April 2012 evaluation diagnosed Petitioner with major depressive disorder meeting the B and C criteria of Listing 12.04. (AR 488-491.)

Despite Petitioner's argument, the Court finds the ALJ's determination is supported by substantial evidence in the record. Although Petitioner's treatment records indicate treatment for depression, treatment notes reflect her depression did not limit her from continuing to work, and her condition was satisfactorily controlled by medication. On May 22, 2008, during which period Petitioner was working, Dr. Ng indicated Petitioner was suffering from anxiety attacks because Petitioner had "suddenly gone off Tramadol." (AR 288-89.) There are no treatment notes

indicating Petitioner was told to discontinue her medication, and the notes indicate Petitioner "took herself off Tramadol," which was the reason for the anxiety attack. (AR 288.) Dr. Ng prescribed Lexapro 20mg daily for her depression. (AR 290.)

At her two week follow-up visit on June 5, 2008, Dr. Ng noted Petitioner was feeling better on Lexapro. (AR 296-97.) On July 15, 2008, Dr. Ng noted Petitioner reported she was seeing improvements in her depression. (AR 300.) Petitioner followed up with Dr. Ng on October 15, 2008, and expressed that she wanted to change from Lexapro to another anti-depressant. Dr. Ng prescribed Cymbalta. (AR 311.) Dr. Ng encouraged Petitioner to exercise to treat her seasonal depression, which was worse in the winter.

On February 17, 2009, Petitioner again visited Dr. Ng, and requested a change in her medication from Effexor back to Lexapro. (AR 322.) Dr. Ng prescribed Lexapro 20mg, and requested a follow up in 3-4 weeks. (AR 326-27.) On March 24, 2009, Petitioner reported to Dr. Ng she felt "much better" on Lexapro. (AR 328.) Treatment notes from Dr. Ng dated June 2, 2009, indicate Petitioner's depression was "under control" on medication (Lexapro 30mg daily). (AR 352.)

The above history notably lacks any treatment by a mental health counselor or other professional besides Dr. Ng, and indicates Petitioner's depression symptoms were seasonal in nature and controlled by medication. Furthermore, Petitioner continued to work during this period of time.

Dave Sanford, Ph.D., the DDS reviewing psychologist, completed a psychiatric review on March 9, 2010, and upon review of the above medical history, determined Petitioner's functional limitations were nonexistent with respect to her activities of daily living and ability to maintain social functioning; mild with regard to Petitioner's ability to maintain concentration,

persistence, or pace; and she displayed no episodes of decompensation. (AR 384.) Dr. Sanford concluded Petitioner's depression was therefore under control with Lexapro, and considered the impairment "non-severe." (AR 35, 386.) Dr. Sanford's conclusion is consistent with the requirements of 20 C.F.R. § 416.920a (d), which permit a finding of not severe if the degree of limitation in the three functional limitations are none or mild, and there are no episodes of decompensation. In contrast, Rebecca Alexander, Ph.D., examined Petitioner on April 2, 2012. At that time, Dr. Alexander concluded Petitioner experienced "intermittent periods of depression" over the last fifteen years which, at the time of examination, was severe. (AR 481.)

Here, there is substantial evidence in the record to support the ALJ's conclusion that Petitioner's mental impairment was not sufficient to satisfy the de minimus test for severity. Petitioner's mental health treatment records are not extensive. Although treatment notes date back to May of 2008, Petitioner's depression appeared controlled by medication. Dr. Ng, Petitioner's primary treatment provider for her depression, did not diagnose or note a major depressive disorder or an inability to function at any time. Petitioner never sought out a counselor during any period of time, except for one visit on November 8, 2010. (AR 208A.) Further, Petitioner continued to work through June of 2009, while she was receiving treatment for depression. (AR 35.) *C.f. Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (affirming ALJ's rejection of doctor's opinion that claimant could not work due to depression when the record indicated claimant continued to work).

The ALJ concluded the report completed by Dr. Alexander in April of 2012 was not entitled to significant weight (AR 35), because Petitioner had not sought mental health counseling and had stopped taking her medication in the winter of 2011, which either suggested her symptoms were not significant, (AR 35), or were unnecessarily exacerbated because the

evidence in the record indicated her symptoms previously were adequately controlled by medication.[2] The ALJ instead adopted Dr. Sanford's report. Because there were contradictory medical opinions in the record, the ALJ was entitled to reject Dr. Alexander's opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record, which the ALJ gave as identified above. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Dr. Sanford's report may serve as substantial evidence in the record so long as it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53, F.3d 1035, 1042 (9th Cir. 1995).

Here, the evidence of record discussed above and considered by the ALJ constitutes substantial evidence to support the ALJ's finding that Petitioner's mental health impairment was not severe. It is solely the province of the ALJ to resolve the conflict in the record, and it was Petitioner's burden to prove severity at step two. Based upon the evidence of record, the Court finds the ALJ's determination that Petitioner's mental health impairment was not severe was not the product of legal error.

**2. Residual Functional Capacity Finding**

At the fourth step in the sequential process, the ALJ determines whether a claimant's impairments prevent the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands

[2] To obtain benefits, a claimant must follow treatment prescribed by his physician if the treatment can restore the claimant's ability to work. 20 C.F.R. § 416.930(b). If a claimant does not follow prescribed treatment without a good reason for failing to comply, a finding of not disabled is warranted. 20 C.F.R. § 416.930(b); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Here, Petitioner's depression was documented as adequately controlled by medication, yet Dr. Alexander examined her at a time when Petitioner had discontinued her medication without any evidence in the record she was instructed to do so. The ALJ specifically noted Dr. Alexander examined Petitioner after she had stopped taking her prescribed anti-depressant medication, (AR 35), providing an additional reason for rejecting Dr. Alexander's opinion.

of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. In other words, the ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2000).

Petitioner argues the RFC finding is not supported for three reasons. First, Petitioner argues the ALJ improperly assessed Petitioner's credibility. Second, Petitioner contends the RFC finding fails to include limitations from non-severe impairments, citing her depression and carpal tunnel syndrome. And finally, Petitioner contends the ALJ did not properly evaluate the medical evidence (and "misstated" the evidence) regarding Petitioner's headaches and fatigue. Each of Petitioner's three arguments is addressed below.

**A. *Credibility***

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on

the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

A failure to follow prescribed treatment may be used as sufficient evidence to support a conclusion that a claimant is not credible in describing symptoms about pain, and form the basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th

Cir. 2007).

Here, Petitioner alleged she experienced excessive daytime sleepiness on a daily basis such that she would fall asleep at work (AR 635-36); severe headaches causing her to remain in bed all day on bad days, while on good days she functioned for about four hours each day (AR 639-46); arm pains (AR 648); restless legs during the day and night (AR 649-50);[3] dropping things (AR 647-48); and difficulty with memory (AR 684).

The ALJ determined Petitioner's self-described limitations were inconsistent with the evidence of record and the degree of impairment she alleged. The ALJ pointed to specific evidence in the record, including inconsistencies in Petitioner's testimony, and reports by Petitioner's examining and treating physicians, in identifying what testimony was not credible and what evidence undermined Petitioner's complaints.

First, contrary to Petitioner's assertions, the Court finds the ALJ did not rely solely upon his conclusion of Petitioner's "poor work history" to discredit Petitioner. Rather, the ALJ pointed out that Petitioner's earnings record in the first half of 2009, which was substantially the same as in 2008, was not consistent with Petitioner's allegations of excessive daytime sleepiness and missed work. (AR 36.) Further, the ALJ noted also that the medical evidence of record indicated Petitioner suffered from severe impairments at the same level prior to the alleged onset date for many years (headaches, fatigue, back pain requiring surgery), yet Petitioner was able to work at substantial gainful activity levels during those same periods. (AR 32.) The ALJ found that Petitioner's statements regarding worsening of her impairments after two motor vehicle

[3] Petitioner testified at the October 11, 2011 hearing that she had restless legs at night for "years," but in the last "eight months" her legs began aching during the day and they would "jump, jump, jump, jump." (AR 649.) At the May 14, 2012 hearing, Petitioner testified her restless legs bothered her only at night, but "then it started going to the arms." (AR 664.)

accidents was not credible, as there was no evidence of treatment notes mentioning the car accidents, and Petitioner could not remember when they occurred. (AR 32.) Additionally, the ALJ recognized Petitioner applied for and received unemployment benefits after she ceased working in June of 2009, which required her to acknowledge she was willing, able, and ready to work. (AR 32.) *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime…").

Second, the Court finds the ALJ properly evaluated the medical evidence of record regarding Petitioner's complaints of spinal limitations. He generally stated that the medical evidence of record did not support Petitioner's complaints of disabling limitations related to back pain. (AR 33.) Then, the ALJ summarized and gave examples of the medical evidence of record from February 2009, to December of 2011, to refute the Petitioner's complaints that her back pain rendered her disabled. For instance, the 2009 exam was normal, and the October 2011 exam showed normal gait and station. The ALJ discredited Dr. Lorenz's assessment of December 22, 2011, because the doctor's notations of "large joint degenerative changes" were vague, and no functional limitations were described in any great detail. Further, Dr. Lorenz did not quantify any limitation in range of motion. (AR 33.) Later MRIs in December of 2011 indicated only mild to moderate changes. (AR 33.)

Next, Petitioner takes issue with the ALJ's statement that Petitioner worked at substantial gainful activity levels despite her severe and non-severe impairments. Petitioner contends she did not work after her June 2009 onset date, and that records since June 30, 2009, show an increase in headaches. However, the ALJ discussed Petitioner's headache symptoms, and noted that Petitioner's treating physicians were of the opinion that her headaches were caused by

medication overuse. Petitioner had been taking Tramadol, and headaches are a known side effect of the medication. (AR 34.) Dr. Demattos evaluated Petitioner on April 12, 2012, and her impression was that Petitioner's headaches were the result of "medication overuse," and the plan was to "wean her abortive medications to no more than 2 times per week." (AR 34, 494.)

During an office visit on February 16, 2010, Petitioner's treating physician, Dr. Spady, indicated also that he suggested to Petitioner she should not be taking six Tramadol per day for headaches. (AR 357.) A failure to follow a prescribed course of treatment is a specific and legitimate reason to rebut excess pain testimony. *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). Accordingly, the ALJ was entitled to conclude that Petitioner's failure to follow her physicians' advice to discontinue taking Tramadol and other medications, which in turn was causing her headaches, indicated her pain was not disabling.

Fourth, Petitioner contests the ALJ's conclusion that Petitioner was not disabled because she was able to take her nephews to school. Petitioner contends the ALJ failed to explain how driving the children, who are 9 and 13, to school each morning, was relevant. But, Petitioner takes the ALJ's statements out of context. Rather, the ALJ was noting an inconsistency in Petitioner's testimony, which is permissible evidence to rely upon to discredit Petitioner's credibility. The ALJ specifically noted that Petitioner testified at the hearing that her husband drove the children to school, but she reported in January and July of 2010 she drove her two nephews to school each morning. The ALJ noted a second inconsistency regarding Petitioner's testimony about her restless leg syndrome. During the first hearing on October 11, 2014, Petitioner reported her restless leg symptoms occurred both day and night, but at the second hearing on May 14, 2015, she reported symptoms occurred primarily at night. Inconsistent statements by Petitioner cast doubt upon the sincerity of Petitioner's testimony. *Johnson v.*

*Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Fifth, Petitioner asserts that her earnings actually decreased from 2008 to 2009, consistent with an increase in absences to which Petitioner testified. (AR 11.) Thus, Petitioner asserts that the ALJ's conclusion that her testimony about excessive absences from work was inconsistent with her earnings record in 2009 was in error. But, the ALJ was entitled to draw the conclusion that an individual capable of engaging in substantial gainful activity, albeit at a reduced level, and with an increase in symptoms, was not disabled by her impairments. (AR 34.) Simply because other conclusions may be drawn from the evidence is not reason to reverse the credibility determination of an ALJ based upon such contradictory or ambiguous evidence. *Johnson*, 60 F.3d at 1434.

Finally, the ALJ noted that, despite Petitioner's allegations that she could not sit for long periods of time and experienced excessive pain and sleepiness on a daily basis along with disabling headaches, Petitioner was able to sit through the hour and a half hearing after driving two and a half hours to the hearing, and appeared to experience no discomfort during the proceeding. (AR 36.) Although the ALJ recognized that his observations of Petitioner at the hearing could not be considered conclusive of Petitioner's pain on a daily basis, the ALJ gave his own observations some weight in reaching his conclusion regarding Petitioner's credibility. "The inclusion of the ALJ's personal observations does not render the decision improper," as Petitioner alleges. *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). Here, the ALJ's personal observation that Petitioner failed to exhibit symptoms consistent with her disabling reports of pain and exhaustion was coupled with a comprehensive evaluation of Petitioner's testimony, and an examination of the treatment notes of both examining and treating physicians. Under such

circumstances, the inclusion of the ALJ's personal observations do not render his findings erroneous. *Morgan*, 169 F.3d at 600.

Petitioner attempts to discredit each individual, discrete conclusion contained in every paragraph of the ALJ's determination. But, when viewed as a whole, and taken together, the ALJ gave clear and convincing reasons for discounting Petitioner's credibility, which in turn were supported by substantial evidence in the record as a whole. The Court will not second guess the ALJ's credibility determination under such circumstances.

**B. *Non-Severe Impairments***

Petitioner contends the ALJ erred by not including limitations from Petitioner's mental health impairments or carpal tunnel syndrome in the RFC finding. Petitioner's argument consists of one sentence, without any explanation. Pet. Brief at 17 (Dkt. 14.) Moreover, the Court dinfs the ALJ concluded that Plaintiff's mental health impairments did not impact her ability to engage in substantial gainful activity because she had worked for some time prior to her onset date of June 2009 with those same complaints, and the record was replete with medical evidence that her depression was controlled with medication. As for her carpal tunnel syndrome, the ALJ noted that, upon examination by Dr. Bjornstad, Petitioner was able to do repetitive tasks with her hands, fingers, and arms, consistent with Petitioner's demonstration of normal fine motor skills. (AR 37, 368.) The ALJ need not consider or include in the RFC alleged impairments that have no support in the record, and therefore it was proper to exclude consideration of Petitioner's carpal tunnel syndrome from the RFC assessment. *See Osenbrock*, 240 F.3d at1163–64.

**C. *Headaches and Fatigue***

Petitioner argues the ALJ's conclusion about the side effects of Tramadol were in error. The ALJ, as discussed above, relied upon the treatment notes and conclusions of Dr. Spady and

Dr. Demattos, who both directed Petitioner to discontinue taking Tramadol for her headaches, and to use less medication in general to control her headaches. (AR 34.) The medical evidence upon which the ALJ relied, which came from two different physicians at two different times and was therefore consistent, provided sufficient support in the record for the ALJ's conclusion that Petitioner's headaches could be controlled by taking less medication, including titrating off of Tramadol.

## CONCLUSION

The ALJ offered specific, clear, and convincing reasons for rejecting Petitioner's testimony concerning her physical and mental impairments, and did not commit legal error. The fact that the medical evidence of record is subject to alternative interpretations, as Petitioner urges, is not sufficient to upset the determination of the ALJ. The decision of the Commissioner will be affirmed.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

UNITED STATES COURTS DISTRICT OF IDAHO

Dated: June 22, 2015

Honorable Candy W. Dale
United States Magistrate Judge